UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                              Plaintiff,

                                                                Case # 13-CR-6102-FPG

v.

                                                                DECISION & ORDER

ROBERT J. PALERMO,

                              Defendant.

_____

By text order of Hon. Frank P. Geraci, Jr., United States District Judge, entered on July 9, 2013, this case was referred to United States Magistrate Judge Marian W. Payson, pursuant to 28 U.S.C. § 636(b)(1)(A)-(B), to hear all pretrial matters and file a Report and Recommendation for disposition. ECF No. 25. The Indictment in this case charged Defendant with Conspiracy to Commit Sex Trafficking in violation of 18 U.S.C. § 1594(c) and Sex Trafficking of a Minor in violation of 18 U.S.C. §§ 1591(a)(1) and 1591(b)(2), (2). ECF No. 24.

Defendant filed on September 11, 2013 a Notice of Motion (ECF No. 36) and Affidavit (ECF No. 36-1), seeking various forms of relief, including, among other requests, discovery and inspection; release of *Brady* materials; a bill of particulars; dismissal of the Indictment based upon the lack of proper instructions before the Grand Jury, voting irregularities of the Grand Jury and presentation of evidence before the Grand Jury; dismissal of the Indictment on the ground of insufficiency; suppression of any and all alleged statements; suppression of evidence and identification evidence; suppression of tangible evidence; and severance. On September 30, 2013, the government filed its Response to Defendant's pretrial motions. ECF No. 41.

In addition to granting some of Defendant's requests, denying others, and noting the withdrawal of Defendant's request for suppression of identification evidence, the Magistrate

Judge, by Order filed on October 7, 2013, reserved decision on Defendant's motions for (1) dismissal of the Indictment due to Grand Jury voting irregularities and improper Grand Jury instructions; (2) dismissal of the Indictment due to insufficiency; (3) severance; and (4) suppression of statements. ECF Nos. 44, 47. The Magistrate Judge also granted Defendant an opportunity to file an affidavit regarding suppression of certain evidence. *Id.* Defendant filed this affidavit on October 29, 2013 (ECF No. 50), and the government filed its response on November 8, 2013 (ECF No. 51).

Following an evidentiary hearing held on December 18, 2013 regarding suppression of alleged statements made by Defendant on March 28, 2013 to Rochester Police Department ("RPD") Investigator and Federal Bureau of Investigations ("FBI") Child Exploitation Task Force Officer Brian Tucker ("FBI Task Force Officer Tucker"), and FBI Special Agent Barry Couch ("FBI Special Agent Couch") at the New York State Division of Parole ("Parole"), 350 South Avenue, Rochester, New York, the Magistrate Judge granted Defendant additional time to investigate the seizure of a cell phone and directed him to advise the Court by December 31, 2013 as to whether he wanted a hearing regarding such seizure. ECF No. 55. The Magistrate Judge also set filing deadlines for the parties' post-hearing submissions. *Id.*

On December 30, 2013, the Magistrate Judge granted Defendant's written request for a suppression hearing regarding the seizure of the cell phone, and ordered the continuation of the evidentiary hearing on January 30, 2014 (ECF No. 56). At the conclusion of the evidentiary hearing, during which New York State Department of Corrections and Community Supervision Parole Officer Kevin Gibbs ("P.O. Gibbs") testified, the Magistrate Judge extended the deadlines for the parties' post-hearing submissions. ECF No. 58. Defendant filed his post-hearing submissions on April 28, 2014 (ECF No. 68) and July 8, 2014 (ECF No. 76), and the government

filed its post-hearing submissions on May 27, 2014 (ECF No. 73) and July 16, 2014 (ECF No. 78).

Thereafter, on September 16, 2014, the Magistrate Judge rendered on the record an oral Report and Recommendation and, on September 17, 2014, issued a written Decision & Order and Report & Recommendation based upon the reasoning set forth earlier on the record (ECF No. 82), recommending that this Court deny Defendant's motions (1) to suppress evidence of statements made on March 28, 2013; (2) to suppress evidence seized from his cell phone; (3) to suppress any evidence derived from the statements or cell phone; (4) seeking dismissal of the Indictment based upon the lack of proper instructions before the Grand Jury, voting irregularities of the Grand Jury, and presentation of evidence before the Grand Jury; and (5) seeking dismissal of the Indictment due to insufficiency. *Id.* Additionally, the Magistrate Judge denied, as moot, Defendant's motion for severance because the Co-Defendant Daniel A. Tanck ("Tanck") had pled guilty.[1] *Id.* She further denied Defendant's motion for disclosure of the Grand Jury minutes. *Id.*

In accordance with the requirements set forth in 28 U.S.C. § 636(b)(1), the Magistrate Judge further ordered any Objections to the Report and Recommendation to be filed within fourteen (14) days after receipt of a copy of the Report and Recommendation. *Id.* The Court has received both the Defendant's timely filed Objections to the Report and Recommendations (ECF No. 85) and the government's Response to the Defendant's Objections to the Report and Recommendation (ECF No. 88).

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must make a *de novo* determination of those portions of the Magistrate Judge's Report and Recommendation to which objections have been made. The Court "may accept, reject, or modify, in whole or in part, the findings or

---

[1] Co-Defendant Daniel A. Tanck pled guilty in this Court to Count 2 of the Indictment on March 18, 2014.

recommendations made by the magistrate judge." *Id.* Upon a *de novo* review of the written

Report and Recommendation, and a review of the Objections and Responses thereto, the parties'

post-hearing submissions, any previously filed motion papers and memoranda of law, the official

transcripts of the evidentiary proceedings held on December 18, 2013 (ECF No. 57) and January

30, 2014 (ECF No. 61), and of the Oral Report and Recommendation (ECF No. 84), I find no

basis to alter, modify or reject the Magistrate Judge's Report and Recommendation.

Objecting to the Magistrate Judge's recommendation to deny suppression of alleged

statements, Defendant contends that it is without "foundation in law and fact," specifically,

stating as follows:

> The lynchpin is that the Court seems to base her decision on a relationship to the
> Defendant's status at parole on March 28, 2013. The Court ruled that the facts
> showed that the Defendant was not in custody, and that an important element of
> that is that the Defendant himself did not view himself in custody and had the
> burden to come forth at the hearing to prove that he had a reasonable belief that he
> was in custody. This is a false decision in that the burden is not on the Defendant
> but on the prosecution and that the testimony that developed at the hearing clearly
> indicates that based on the totality of the circumstances and on a reasonable view
> of the evidence as developed at the hearing that the Defendant was in custody, not
> free to leave, was a target, and was never read his *Miranda* warnings. Based on
> this and the fruit of the poisonous tree, all items must be suppressed.

ECF No. 85. I disagree.

Here, the evidence showed that Defendant went to the local parole office for his regularly

scheduled weekly supervision visit and, upon arrival, was asked to wait, but was not advised, in

advance, that he would be meeting with FBI Task Force officers, or ordered by Parole to meet

with FBI Task Force officers. No evidence was presented which demonstrated that Defendant

was required by Parole to answer the questions of the FBI Task Force officers or threatened with

arrest or a parole violation if he did not do so, or was told that he could not invoke his Fifth

Amendment right against self-incrimination during the interview.

Defendant was escorted un-handcuffed to a room where, with the door closed, he met alone with two FBI Task Force officers who were dressed in civilian clothes.   Once inside the room, he was not handcuffed or physically restrained in any way during the interview.   Though the two interviewing officers wore holstered weapons, there is no evidence that Defendant saw them — FBI Special Agent Couch's weapon was not visible and FBI Task Force Officer Tucker's weapon was holstered at his side and may have been covered by his sweater.  Neither weapon was displayed to Defendant during the interview.  After introducing themselves, the FBI Task Force officers informed Defendant that they needed to speak with him, out of the presence of parole officers, about a runaway girl who had been with his roommate Daniel Tanck.  They did not advise Defendant of his *Miranda* rights, or tell him that he was a suspect or a target in the investigation.  They did not tell him that he was required to answer their questions, or that he was not free to leave until they were done.  Nor did the FBI Task Force officers explicitly tell him that he was free to leave, or could stop answering their questions.  FBI Task Force Officer Tucker knew that Parole intended to violate Defendant but not the specific charges.

Defendant continued to answer questions about the Emerson Street occupants, even after the FBI Task Force officers informed him once, near the beginning of the interview, that lying to federal agents was a crime.  No threats or promises were made to Defendant to induce him to answer their questions or in exchange for his cooperation.  They all sat in chairs around the table, and their tone was conversational.  Defendant never requested to stop the questioning, never inquired about an attorney, and never asserted his Fifth Amendment right against self-incrimination.  Furthermore, he never asked to leave the room at any time during the interview.

The interview was short in duration, lasting no longer than 30 minutes.  At the end of the interview, the FBI Task Force officers thanked Defendant and left the room so that parole officers could meet with him.  The FBI Task Force officers did not arrest Defendant for the

commission of any crime.  After meeting with parole officers, Defendant was taken into custody for having contact with a felon, a non-criminal violation of his parole conditions.

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that "[t]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination" and, further, that the defendant, first warned of his Fifth Amendment privilege against self-incrimination, may then voluntarily waive this right.  In determining, for purposes of *Miranda* protection, whether a person is in custody, "the overarching custody question is whether a reasonable person in the subject's position would have understood himself to be subjected to restraints comparable to those associated with a formal arrest." *United States v. FNU LNU*, 653 F.3d 144, 153 (2d Cir. 2011) (internal citations, quotations, and alterations omitted)); *United States v. Newton*, 369 F.3d 659, 672 (2004) (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)).  "Custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318, 323 (1994).  A court making this objective determination "must examine all the circumstances surrounding the interrogation," *see J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2402 (2011), including, *inter alia*: the duration of the encounter; the location of the encounter; whether the officers used restraints; whether weapons were present or displayed; and whether officers told the suspect they were free to leave or under suspicion. *U nited States v. Wright-Darrisaw*, No. 12-CR-6117-FPG, 2013 WL 3456950, at *1 (W.D.N.Y. July 9, 2013) (citing *United States v. FNU LNU*, 653 F.3d at 153).

Defendant's Objections notwithstanding, I agree with the Magistrate Judge that under all of these circumstances presented, the government established that Defendant was not advised of

his *Miranda* rights because he was not in custody—a reasonable person in Defendant's position would not have believed that he was not free to leave, and that the restraints on his freedom were not comparable to those associated with formal arrest. Viewed objectively, the evidentiary record demonstrated that Defendant was not subjected to a custodial interrogation; he was not advised by FBI Task Force Officer Tucker and FBI Special Agent Couch that he was a suspect or target whom they intended to arrest at the conclusion of the interrogation, or advised that he was under arrest or would be arrested by Parole or the FBI or subject to a parole violation if he did not answer the FBI Task Force officers' questions. Moreover, as the legion of cases cited by the Magistrate Judge reflects, the mere fact that questioning by FBI Task Force officers took place at a regularly scheduled parole supervision meeting did not magically transform an otherwise noncustodial interview into a custodial interrogation, or render Defendant in custody. *See, e.g., Minnesota v. Murphy*, 465 U.S. 420, 431-32 (1984); *United States v. Jennings*, 652 F.3d 290, 304 (2d Cir. 2011); *United States v. Peldomo*, No:10-CR-0069, 2010 WL 5071489, at *1-2 (E.D.N.Y. Dec. 7, 2010); *Perez v. Ercole*, No. 09 Civ. 2180(WHP)(KNF), 2010 WL 2541974, at *5 (S.D.N.Y. June 22, 2010); *United States v. Cranley*, 350 F.3d 617, 622 (7th Cir. 2003); *Posada v. Yates*, No. SACV 09-0695-VBF (MLG), 2010 WL 149819, at *7 (C.D. California. Jan. 14, 2010); *United States v. Webb*, No. CR. 06-5E, 2006 WL 3254534 (W.D. Pa. Nov. 9, 2006); *United States v. Little*, Criminal Action No. 06-644, 2007 WL 1853975, at *4 (E.D. Pa. June 26, 2007); *United States v. Wright-Darrisaw*, No. 12-CR-6117-FPG, 2013 WL 3456950, at *1 (W.D.N.Y. July 9, 2013). Nor did the fact that the FBI Task Force officers told Defendant that they needed to speak to him, render him in custody. *See, e.g., United States v. Ramos*, Docket No. 1:11-cr-111-jgm-1, 2012 WL 6708191, at *3 and *12 (D. Vt. Dec. 26, 2012); *United States v. Cunningham*, No. 5:11-CR-65, 2012 WL 369923, at *2 and *5 (D. Vt.

Feb. 3, 2012); *United States v. Freeman*, No. 04-M-4078, 2005 WL 3032514, at *2 and *4 (W.D.N.Y. Nov. 10, 2005).

Additionally, the Magistrate Judge addressed the issue of the voluntariness of the alleged statements, even though Defendant did not specifically argue that his statements were involuntary within the meaning of the Fifth Amendment. In any event, whether a statement was voluntarily made is analyzed under the totality of the circumstances, wherein the Court must assess: "(1) the characteristics of the accused; (2) the conditions of the interrogation; and (3) the conduct of law enforcement officials." *United States v. Awan*, 384 F. App'x 9, 14 (2d Cir. 2010) (quoting *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir. 1988). The record in this case disclosed no evidence that the agents engaged in any conduct or made verbal threats, or promises, or attempts to overbear Defendant's will, so as to render Defendant's statements involuntarily made (*United States v. Kaba*, 999 F.2d 47, 51 (2d Cir. 1993)) (quoting *United States v. Guarno*, 819 F.2d 28, 30 (2d Cir. 1987)); *United States v. Awan*, 384 F. App'x 9, 14 (2d Cir. 2010); *United States v. Moore*, 670 F.3d 222, 233 (2d Cir. 2012). Therefore, I also agree with the Magistrate Judge that under the totality of the circumstances analysis, Defendant voluntarily agreed to be interviewed by the FBI Task Force officers and voluntarily continued the interview until its conclusion. Denial of suppression of the statements made on March 28, 2013 is properly warranted.

Regarding the cell phone, the Defendant contends that it was illegally seized and information contained therein was used to obtain a search warrant for his residence and the seizure of other durable items. Defendant generally objects to the Magistrate Judge's ruling regarding the seizure of his cell phone, chiefly relying on *Riley v. California*, 134 S. Ct. 2473, 2493 (2014) in which the Supreme Court recently held that "a warrant is generally required

8

before a search of a cell phone, even when a cell phone is seized incident to an arrest." As did the Magistrate Judge, I conclude that Defendant's reliance is misplaced.

The evidentiary proof adduced at the hearing demonstrates that prior to Defendant's interview on March 28, 2013, FBI Task Force officers had already secured a search warrant for the residence on Emerson Street shared by Defendant and Tanck, but had not yet executed it. The search warrant application for Tanck's phone, obtained at the same time, included not only witness accounts of Defendant's involvement, along with Tanck, in the prostitution business, but also Defendant's cell phone number allegedly used for prostitution.

The record also demonstrates that later that same day, at the request of Parole Officer Yeager ("P.O. Yeager"), who was supervising Defendant, P.O. Gibbs retrieved Defendant's cell phone from Defendant's mother's car which was in the parking lot of the parole office. P.O. Yeager provided a description of the vehicle which P.O. Gibbs used to locate it in the parking lot. P.O. Gibbs observed Defendant's mother sitting in the driver's seat of the described vehicle, waiting for Defendant. After P.O. Gibbs stated that he needed the phone, Defendant's mother handed it to him through the window. Without looking at anything on the phone, P.O. Gibbs walked it back to the parole office and handed it to P.O. Yeager. He did not observe P.O. Yeager look at anything on the phone. FBI Task Force Officer Tucker obtained Defendant's cell phone from Parole when he showed the warrant he obtained on April 2, 2013, several days subsequent to his interview of Defendant on March 28, 2013.

I agree with the Magistrate Judge that the seizure of Defendant's cell phone did not violate the Fourth Amendment as it was justified under the automobile exception to the warrant requirement. The Fourth Amendment generally requires police officers to obtain a warrant based on probable cause to justify a seizure and search, providing that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants

shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The "automobile exception" authorizes a warrantless search of a readily mobile automobile where there is probable cause to believe the vehicle contains contraband or other evidence of a crime. *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more." *Id.* (citing *California v. Carney*, 471 U.S. 386, 393 (1985)). The automobile's "ready mobility" provides an exigency sufficient to excuse the failure to obtain a search warrant once probable cause is clear. *Id.* As the Second Circuit stated in *United States v. Howard*, 489 F.3d 484, 494 (2d Cir. 2007), "The mere inherent mobility of the vehicle is sufficient to constitute the 'ready mobility' the automobile exception cognizes." No special exigency beyond a showing of the mobility of the automobile is required. *Id.* (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999) (per curiam)).

Such was the case here. Defendant's phone was located in his mother's "readily mobile" automobile used to drop him off at the parole office and, prior to the interview by FBI Task Force officers, probable cause to believe that Defendant's phone contained evidence of a crime existed based upon information set forth in the search warrant application.

After reviewing all matters submitted, I find no reason to alter or modify any of the findings and conclusions contained in the Report and Recommendation. Accordingly, the Court accepts and adopts the written Report and Recommendation filed by United States Magistrate Judge Marian W. Payson (ECF No. 82) in its entirety, including the findings and conclusions set forth on the record in the oral Report and Recommendation (ECF No. 83), as reflected in the transcript filed on September 23, 2013 (ECF No. 84). Defendant's Motions to suppress evidence of the statements made on March 28, 2013, evidence from the cell phone, and evidence derived

from the statements or cell phone, as well as the motions to dismiss the Indictment (ECF No. 36),

are  hereby denied.

IT IS SO ORDERED.

Dated: Rochester, New York
        November 6, 2014

HON. FRANK P. GERACI, JR.
United States District Judge